Crowell & Moring by Herbert J. Martin and Frederick W. Claybrook, Jr., Washington, D.C., Warner, Norcross & Judd by Joseph G. Scoville, Grand Rapids, Mich., for plaintiff.

Christopher A. Mills and John VanGessel, Chicago, Ill., for defendant.

## The CLEVELAND–CLIFFS IRON COMPANY, Plaintiff,

v.

## CHICAGO & NORTH WESTERN TRANSPORTATION COMPANY, Defendant.

### No. M81–68 CA2.

United States District Court,
W.D. Michigan, N.D.

Dec. 28, 1982.

## OPINION RE: MOTION TO DISMISS AMENDED COMPLAINT

HILLMAN, District Judge.

Plaintiff shipper is an iron ore mining company. In 1969, it entered into long-term shipping contracts with defendant railroad. The agreement was to last at least until 1984, with provisions for termination or extension included in the original contract. The agreement is memorialized in two separate contracts, the "Empire Mine Agreement" executed on March 7, 1969, and the "Marquette Range Agreement" executed on March 6, 1969. Plaintiff contends that a letter from C & NW to Cleveland Cliffs transmitting the two

agreements (hereinafter the "Braun letter") also contains proposed terms and conditions binding upon the parties.

The case is now before the court on motion by defendant to dismiss the amended complaint. It is argued that since the complaint asks for declaratory and injunctive relief with respect to charges collected by C & NW in excess of those allegedly permissible under the Braun letter, this court must pass upon the reasonableness of rates contained in tariffs in effect on the effective date of the Staggers Rail Act of 1980, Pub.L. No. 96–448, 94 Stat. 1895 (codified as amended in scattered sections of 49 U.S.C.). Defendant contends that such review is barred by section 229 of the Staggers Act.[1] For the following reasons, I find that section 229 does not bar this action and, accordingly, the motion will be denied.

## BACKGROUND

The history of this litigation is long and complex. However, a brief review of the major events is necessary to place the pending motion in its proper context. Additionally, a brief discussion of the Staggers Rail Act of 1980 is in order, since its provisions bear directly upon the rights and liabilities of the parties under the agreements now before the court.

The March 1969 agreements provide for the transportation of large amounts of iron ore and pellets from plaintiff's mines and pelletizing facilities to defendant's docks at Escanaba, Michigan. The rates for these shipments were established by a tariff schedule incorporate into the agreements and subsequently filed with the Interstate Commerce Commission (ICC). The tariff provides for periodic price increases through an acceleration clause.

The parties observed the agreement for 12 years. On March 10, 1981, the carrier sought to increase the rail rates by filing with the ICC a supplemental tariff (Supplement 48). On March 25, 1981, the shipper filed a petition with the ICC seeking suspension and investigation of Supplement 48 before its effective date of April 25, 1981. On April 24, 1981, the ICC issued an order stating its intention to investigate the supplemental tariff, but declining to suspend it. On the same day, and after the ICC decision, the shipper filed the instant action seeking a temporary restraining order preventing the rate increase, a declaration that its contracts with the carrier were valid and binding, and injunctive relief.

The ICC intervened to support the railroad's position that the District Court lacked subject matter jurisdiction over rate contracts entered into prior to the effective date of the Staggers Act. The court ruled, however, that under section 208 of the Act, 49 U.S.C. § 10713, it had jurisdiction to decide all questions relating to the 1969 contract except whether the rate provided for in that contract was confiscatory. The court ruled that the ICC retained exclusive jurisdiction over that question.

On May 27, 1981, the court granted the shipper's request for a preliminary injunction enforcing the contract until either the ICC determined whether the contract was confiscatory or the court reached a decision on the merits. On the same day, the court denied the carrier's motion to dismiss for lack of subject matter jurisdiction.

1. Defendant raises other arguments in its motion to dismiss. However, the issues presented thereunder have been mooted during the pendency of the motion. Specifically, defendant argued that this court lacks jurisdiction to enforce a rate contract between a rail carrier and a shipper entered into prior to the effective date of the Staggers Act. This position has been flatly rejected by the United States Court of Appeals for the Sixth Circuit in *Cleveland-Cliffs Iron Co. v. I.C.C.*, 664 F.2d 568 (6th Cir.1981). Defendant also argues that since the rate contract upon which the amended complaint is grounded has not been filed with the I.C.C., this court is without jurisdiction to enforce it. 49 U.S.C. § 10713(b). However, as the *Cleveland-Cliffs* case, *supra*, recognizes, this position flies in the face of the express language of section 208(j), which states that "[t]he provisions of this section [including the requirement that contracts be filed with the I.C.C.] shall not affect the status of any lawful contract between a rail carrier and one or more purchasers of rail service that is in effect on the effective date ..." of the Act. 664 F.2d at 588, 591.

On June 8, 1981, the court certified for immediate appeal to the United States Court of Appeals for the Sixth Circuit the issue whether the Staggers Act gives the District Court jurisdiction to enforce rate agreements entered into prior to the effective date of the Act, where such contracts were not at issue in an ICC proceeding pending on the effective date of the Act. On March 29, 1982, the Court of Appeals upheld this court's ruling on the jurisdictional issue, noting that the contracts at issue are no longer subject to reasonableness review by the ICC, and that jurisdiction to enforce such contracts lies in the courts. (No. 81–1523, 6th Cir., March 29, 1982). *See, Cleveland Cliffs Iron Co. v. I.C.C.*, 664 F.2d 568 (6th Cir.1981), where the court decided precisely the same issue raised by the interlocutory appeal in the instant action.

On December 23, 1981, the ICC completed its investigation, determining that the C & NW's proposed rates were unlawful and ordered them cancelled. The Commission ordered that all but one contract rate be enforced, and ordered that a rate be negotiated in place of one rate that was not enforced. C & NW agreed to cancel its proposed rates, thus mooting a major portion of the pending lawsuit.

However, on June 8, 1981, Cleveland Cliffs filed a First Amended Complaint. The amended complaint differs from the original complaint in that it contains allegations that C & NW has breached the 1969 agreement. It is alleged that during the 1979 shipping season, C & NW charged Cleveland Cliffs rates in excess of those contained in the Braun letter. Similar violations of the terms contained in the Braun letter are alleged for the 1980 shipping season. As a result of these alleged breaches, Cleveland Cliffs claims it was injured in the amounts of $240,902 during the 1979 shipping season and $244,312 during the 1980 shipping season.

In its prayer for relief, the shipper asks the court to enter a declaratory judgment determining that the Marquette Range Agreement, the Empire Mine Agreement, and the Braun letter are valid and binding upon the parties with respect to rates and conditions for the shipment of ore to Escanaba, and that Cleveland-Cliffs is required to pay rates only as calculated in accordance with those documents. Furthermore, plaintiff seeks damages in the amount of the alleged overcharges ($485,214).

## ISSUE

The sole issue remaining under the current motion to dismiss is whether section 229 of the Staggers Act bars this action.

## DISCUSSION

The Staggers Rail Act of 1980 was enacted to achieve the following purpose:

"to provide, through financial assistance and freedom from unnecessary regulation, the opportunity for railroads to obtain adequate earnings to restore, maintain and improve their physical facilities while achieving the financial stability of the national rail system."

H.Conf.Rep. No. 96–1430, 96th Cong.2d Sess. 80, *reprinted in* [1980] U.S.Code Cong. & Ad.News 4110, 4111.

In essence, the Staggers Act deregulates the rail industry by allowing "to the maximum extent possible, competition and the demand for services to establish reasonable rates for transportation by rail." 49 U.S.C. § 10101a.

Section 208 of the Act, 49 U.S.C. § 10713, authorizes rail carriers and shippers to enter into private agreements establishing rates for rail transportation services. Any such contract must be filed with the ICC and becomes valid unless the ICC finds that the contract violates that section. *See,* 49 U.S.C. § 10713(d), where Congress set forth specific and limited grounds which may form the basis for ICC review. Under the Act, the ICC cannot set the maximum reasonable rate between two contracting parties, because subsection 10713(i)(1) exempts contracts filed with the ICC from the other provisions of the Interstate Commerce Act and from any subsequent review by the ICC.

Furthermore, subsection 10713(i)(2) vests exclusive jurisdiction to enforce contracts filed with the ICC in the courts:

"The exclusive remedy for any alleged breach of a contract entered into under this section shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree."

Finally, subsection 10713(j), commonly known as a "grandfather clause," provides that contracts not subject to the filing requirements of the section are to have the same effect as do those entered into in accordance with the section:

"The provisions of this section shall not affect the status of any lawful contract between a rail carrier and one or more purchasers of rail service that is in effect on the effective date of the Staggers Rail Act of 1980. Any such contract shall hereafter have the same force and effect as if it had been entered into in accordance with the provisions of this section. Nothing in this section shall affect the rights of parties to challenge the existence of such a contract."

It is clear, therefore, that the Staggers Act effected a major change in the adjudication of disputes under rail shipment contracts. The Conference Report to the Act summarized the purpose of section 208:

"The provision (section 208) establishes a separate class of rail service and thereby makes carriers entering into such contracts both common carriers and contract carriers. Once a contract is approved by the Commission or goes into effect because the Commission has not acted within the specified time limits, the service provided under the contract is exempt, ... from all regulation and all of the requirements of the Interstate Commerce Act.... Once contracts are approved under this section, they are to be enforced in the courts and not at the Commission."

H.Conf.Rep. No. 1430, 96th Cong.2d Sess. 100, *reprinted in* [1980] U.S.Code Cong. & Ad.News 4110, 4132.

Likewise, any contract entered into before the effective date of the Staggers Act is to be enforced in the courts. Defendant contends, however, that the instant action is barred by the "Savings Provisions" of section 229 of the Act. That section provides, in pertinent part:

"SAVINGS PROVISIONS

SEC. 229. (a) Any rate that is in effect on the effective date of this Act for transportation by a rail carrier providing transportation subject to the jurisdiction of the Interstate Commerce Commission under subchapter I of chapter 105 of title 49, United States Code, may, during the 180-day period beginning on such effective date, be challenged in a complaint filed with the Interstate Commerce Commission by any interested party alleging that the rail carrier has market dominance over the transportation to which the rate applies, as determined under section 10709 of such title, and that the rate is not reasonable under section 10701a of such title.

(b) Any rate described in subsection (a) of this section—

(1) which is not challenged in a complaint filed within the 180-day period provided in such subsection; or

(2) which is challenged in such a complaint, but (A) the rail carrier is found not to have market dominance over the transportation to which the rate applies, or (B) the rate is found to be reasonable,

shall be deemed to be lawful and may not thereafter be challenged in the Commission or in any court (other than on appeal from a decision of the Commission)."

The purpose of this provision is "to give affected parties a final opportunity to review the reasonableness of existing rates before their opportunity to challenge those rates is curtailed." H.Conf.Rep. No. 96–1430, 96th Cong., 2d Sess. 121, *reprinted in* [1980] U.S.Code Cong. & Ad.News 4110, 4153. This purpose is to be achieved by providing 180 days from the effective date of the bill "in which existing rates may be challenged as unreasonably high ..." *Id.* In short, section 229 gave affected parties a "grace period" within which they could pursue remedies before the ICC which were being eliminated by the Staggers Act, namely, the right to challenge the reasonableness of contract rates in Commission proceedings.

Defendant contends that the shipper has waived its right to complain about the 1979 and 1980 rates. It is argued that since Cleveland-Cliffs did not challenge the 1979 and 1980 rates within 180 days after the effective date of the Act, it is barred by section 229(b) from doing so now. I disagree.

In the first place, section 229 was enacted not to prevent a party from suing to enforce a contract, but to allow a final "reasonableness" review under the old law before the Commission's powers to review rates were to be curtailed. The plaintiff in this lawsuit does not seek a determination that the rates charged to during 1979 and 1980 were unreasonable. Rather, it seeks a declaration that the rates charged were in excess of those set forth in the Braun letter, and recovery of damages resulting therefrom.

Secondly, nothing in the Staggers Act suggests that a filing under section 229 is a prerequisite to suing in the courts for breach of contract. If plaintiff were before the court asking that the rates contained in the Braun letter be found unreasonable, then the action would clearly be barred by section 229. In short, section 229 is designed to extend for 180 days the period during which an affected party may petition the ICC for a determination that it is being charged rates that are unlawful. Plaintiff here does not attack the lawfulness of the rates it was charged.

Finally, defendant contends that in order to grant the relief sought on the basis of the Braun letter, the court would necessarily have to find that the rates charged were unreasonable. Such a finding, it is true, would be precluded by section 229. However, the court does not understand plaintiff to claim the Braun rates are unlawful or unreasonable. Rather, plaintiff is asking the court to give effect to those rates, a result that is wholly consistent with the overall purpose of the Staggers Act.

## SUMMARY

This is an action for breach of contract. Plaintiff alleges that it was denied the benefit of its bargain with defendants, a bargain set forth in the Braun letter of February 4, 1969, and that it has suffered substantial financial damages as a result. Section 208 of the Staggers Act, 49 U.S.C. § 10713(i)(2) provides that the exclusive remedy for any alleged breach of a contract entered into under the Act shall be an action in a court of law. Section 10713(j) further provides that lawful contracts between carriers and shippers that are in effect on the effective date of the Staggers Act shall have the same force and effect as if they had been entered into in accordance with the Act.

The rates at issue in this case were in effect on the effective date of the Staggers Act. The lawfulness of those rates is not challenged in this proceeding. Therefore, the contract is not subject to the filing requirements of section 208(b) and is properly subjected to the jurisdiction of this court. *See, Cleveland-Cliffs Iron Co. v. I.C.C., supra,* 664 F.2d at 588–91.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is denied.